767 A.2d 509 (2001)
337 N.J. Super. 435
John A. MURRAY, Petitioner-Appellant,
v.
STATE HEALTH BENEFITS COMMISSION, Respondent-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued February 7, 2001.
Decided February 27, 2001.
*510 Appellant, John A. Murray, argued the cause pro se.
Sherrie L. Gibble, Deputy Attorney General, argued the cause for respondent (John J. Farmer, Jr., Attorney General, attorney; Mary C. Jacobson, Assistant Attorney General, of counsel; B. Michelle Albertson, Deputy Attorney General, on the brief).
Before Judges KING, LEFELT and AXELRAD.
The opinion of the court was delivered by LEFELT, J.A.D.
Petitioner John A. Murray is a County College professor insured under the State Health Benefits Plan ("State Plan"). Rather than selecting one of several Health Maintenance Organizations or a "point of service plan" available under the State Plan for State employees, Murray has chosen the traditional plan. This plan provides partial indemnification to eligible employees and permits participants to select their own doctors and apply for payment to providers or reimbursement of incurred medical expenses that are covered by the plan. In this appeal, Murray seeks $170 reimbursement for colonic hydrotherapy treatments that were denied by the State Health Benefits Commission ("Commission") because the treatments were experimental, not medically necessary, for general health maintenance, and administered by an unauthorized provider.
Colonic hydrotherapy is also called colonic irrigation and is similar to an enema, with the difference being the mechanism used and the magnitude of the volume infused. This therapy apparently was known to ancient Egyptians and Romans and has been available in this country for centuries. Murray hopes to establish that treatments, like colonic hydrotherapy, thought to be safe and effective by complementary or alternative physicians, should be reimbursable under the State Plan like treatments that are prescribed by traditional doctors. This appeal, however, is a poor vehicle to accomplish such a result, and we affirm, but nevertheless express some concerns about the rationale the Commission utilized to find that colonic irrigation was an experimental treatment.
Before discussing Murray's treatments, we first explain the basic administrative structure of the State Plan. The Commission was established by N.J.S.A. 52:14-17.25-45, The New Jersey State Health Benefits Program Act, to administer a program providing comprehensive health care benefits for eligible public employees, retirees and their dependents at reasonable cost. The Commission is composed of the State Treasurer, the Commissioner of Insurance and the Commissioner of Personnel. N.J.S.A. 52:14-17.27. The Commission has entered into a contract with Blue Cross Blue Shield to administer the traditional plan. Previously, Prudential Insurance Company administered the traditional plan. Neither Blue Cross Blue Shield nor Prudential acts as insurers; rather, the *511 State self-insures the cost of the traditional plan, and the plan administrator reviews and pays claims according to the plan. The Commission pays an administrative fee and reimburses the administrator for paid claims. The Commission retains final authority and financial responsibility for the State Plan.
The traditional plan, that was selected by Murray, is described in a booklet entitled "New Jersey State Health Benefits Program Medical Plans Information Handbook." The Commission has statutory authority to establish "such limitations, exclusions, or waiting periods as the commission finds to be necessary or desirable to avoid inequity, unnecessary utilization, duplication of services or benefits otherwise available...." N.J.S.A. 52:14-17.29(B). The Commission's contract with Blue Cross Blue Shield establishes the types of services and supplies that are covered as eligible services. Under N.J.A.C. 17:9-2.16, the Commission has adopted by reference all of the policy provisions in the contract "to the exclusion of all other possible coverages." No benefits may be paid unless they are "stipulated in the contracts held by the [Commission]." N.J.S.A. 52:14-17.29(B).
Under the contract, the traditional plan pays only eligible charges. An eligible charge is defined, in relevant part, as a charge for services that: "are medically needed and appropriate treatment for the medical condition; are listed in `Services and Supplies' [in another section of the contract]; are ordered by a doctor (as defined by the plan) for treatment of illness or injury; ... and are not specifically excluded...." Furthermore, we explained in Heaton v. State Health Benefits Comm'n, 264 N.J.Super. 141, 151, 624 A.2d 69 (App.Div.1993) that the State Plan was not to be considered a commercial insurance policy. The Commission must balance its obligations of meeting the health care needs of its members with a fiduciary obligation to make the program cost effective. Consequently, interpretation of the State Plan provisions is not approached as if we were analyzing language in commercial insurance policies. Any ambiguous provisions in the State Plan will not be construed against the State as a contract of adhesion, which is the approach taken with commercial policies. Kievit v. Loyal Protective Life Ins. Co., 34 N.J. 475, 482, 170 A.2d 22 (1961).
The first colonic hydrotherapy was prescribed for Murray by Dr. Oscar Kruesi as treatment for dysbiosis (microbiologic abnormality in the colon or small intestine). A registered nurse, Susan Richter, administered the treatment in her office on June 21, 1995. Richter's charge for the treatment was $130. Murray submitted a claim for reimbursement to the State Plan together with Dr. Kruesi's prescription. Prudential, the claims administrator at the time, paid the claim in full.
The second colonic hydrotherapy was prescribed by doctor Rita Foss Morgan for recurring dysbiosis. It was administered by Richter on October 7, 1996, fifteen months after the first treatment. The charge was $100. Murray's claim for reimbursement again was submitted with the doctor's prescription this time to Blue Cross, which had replaced Prudential as the claim administrator on January 1, 1996. Payment of the claim was first deferred but later paid.
Dr. Kruesi prescribed the third treatment for Murray's vitamin and mineral deficiencies and malabsorption. Richter administered this treatment on January 17, 24 and 31, 1997, three-and-one-half months after the second treatment. Richter's charge was $270. Payment of this claim was again deferred initially by Blue Cross but later paid.
The fourth, and last, treatment was again prescribed by Dr. Kruesi to treat Murray for allergies, dysbiosis, malabsorption and vitamin and mineral deficiencies. Richter administered this treatment on July 24, 1997, six months after the third treatment, and approximately one month *512 after Blue Cross Blue Shield had notified Murray that "your New Jersey State Health Benefits Program does not provide benefits for Colonic Irrigation." Because this treatment came after Murray had been advised that these treatments were not covered, Blue Cross denied Murray's reimbursement claim for Richter's $170 bill. This charge remains unpaid and is the only monetary issue between the parties. It is important to note also that Blue Cross Blue Shield has provided coverage for all charges billed by Murray's doctors in connection with their prescribing these treatments.
Murray requested a hearing before the Commission, and the matter was transferred to the Office of Administrative Law ("OAL"). After conducting a plenary hearing, Administrative Law Judge R. Jackson Dwyer concluded that Richter was not an eligible provider, and that Murray's treatments after June 27, 1997 were administered merely to maintain his overall health and thus were ineligible maintenance treatments. He further concluded that although colonic hydrotherapy was prescribed by a doctor, the prevailing medical opinion within the appropriate specialty was that such services were not safe and effective. Consequently, colonic hydrotherapy was not a medically needed service. Finally, Judge Dwyer concluded that colonic hydrotherapy could not be considered experimental or investigational under the applicable State Plan definition.
The Commission adopted Judge Dwyer's initial decision completely except it modified his determination that colonic hydrotherapy was not experimental or investigational. The Commission explained its reasoning in the following fashion:
Although there do not appear to be any ongoing clinical trials or research studies, the procedure is nonetheless investigational or experimental. Colonic hydrotherapy is prescribed only by a few doctors practicing integrative or alternative medicine. Since it is not deemed safe and effective by the appropriate specialty, it follows that the procedure needs further evaluation before it would be accepted as appropriate treatment.
Our review of agency determinations is quite limited. We can overturn only those administrative determinations that are arbitrary, capricious, unreasonable, or violative of expressed or implicit legislative policies. Campbell v. Dep't of Civil Serv., 39 N.J. 556, 562, 189 A.2d 712 (1963). We will also reverse administrative decisions that are unsupported by substantial, or sufficient, credible evidence in the record. See McDonald v. Pinchak, 139 N.J. 188, 652 A.2d 700 (1995); Henry v. Rahway State Prison, 81 N.J. 571, 579-80, 410 A.2d 686 (1980). Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion." In re Application of Hackensack Water Co., 41 N.J.Super. 408, 418, 125 A.2d 281 (App.Div.1956). Furthermore, "[w]here there is substantial evidence in the record to support more than one regulatory conclusion, `it is the agency's choice which governs.'" In re Vineland Chemical Co., 243 N.J.Super. 285, 307, 579 A.2d 343 (App.Div.), certif. denied, 127 N.J. 323, 604 A.2d 598 (1990) (quoting DeVitis v. New Jersey Racing Comm'n, 202 N.J.Super. 484, 491, 495 A.2d 457 (App.Div.), certif. denied, 102 N.J. 337, 508 A.2d 213 (1985)). In such a situation, we cannot substitute our judgment for that of the agency, even if we would have decided the case differently had we heard the evidence.
Given the limited review standard that we must apply to Murray's appeal, there is no question but that the Commission had sufficient evidence in the record to deny Murray's claim. Richter is a registered nurse. Under the State Plan, only certified nurse practitioners and clinical nurse specialists qualify as providers. The Commission is not a health insurance company as defined by N.J.S.A. 17:48-1(e) and is not governed by the statute which disallows discrimination against registered *513 nurses. N.J.S.A. 17:48E-12. Had Richter been working for the prescribing doctor, the result might be different. But, she bills separately for her services and consequently is not an eligible provider under the State Plan.
Judge Dwyer considered the testimony of both the alternative medicine experts as well as Dr. Schwartz, the State's gastroenterologist. Thus, because both medical disciplines were considered, we cannot conclude that the Commission's decision was arbitrary, capricious or unreasonably biased in favor of traditional medicine at the expense of alternative or complementary medical practices. The record developed before Judge Dwyer provides ample support for the Commission's final decision. Thus, we cannot fault the Commission for concluding that colonic hydrotherapy, as delivered to Murray, was not covered under the traditional plan.
We are, nevertheless, concerned with two aspects of the Commission's rationale for modifying the ALJ's decision and determining that the treatment was experimental and investigational under the State Plan. Under the plan, a procedure is considered experimental or investigational, in pertinent part, if:
The prevailing opinion within the appropriate specialty of the United States medical profession is that the service or supply needs further evaluation for a particular diagnosis or set of indications before it is used outside clinical trials or other research settings. The insurance administrator will determine that based on: a. published reports in authoritative medical literature; and b. regulations, reports, publications, and evaluations issued by government agencies such as the Agency for Health Care Policy and Research, the National Institutes of Health, and the FDA.
Murray argues, based on the plan language, that there were no planned or ongoing clinical trials or published research studies or reports in authoritative medical literature or governmental publications concerning colonic hydrotherapy. Thus, Murray contends that there was no support for the Commission's determination that colonic hydrotherapy was an experimental treatment. Here, however, we agree with the Commission that the plan does not restrict its determination solely to published reports in authoritative medical literature or governmental regulations, publications or evaluations. The Commission can base its determination on whether the record developed establishes that prevailing medical opinion regards a particular treatment as experimental. As the Commission persuasively urged at oral argument, if its determinations were limited to the degree urged by Murray, then treatments that were totally bizarre and unworthy of study, could not be declared experimental or investigational.
However, the language of the State Plan requires that the "insurance administrator," currently Blue Cross Blue Shield, make its decision based on the available medical literature. The administrator must follow the plan's directive. The language provides that "[t]he insurance administrator will determine [the experimental nature of the treatment] based on: a. published reports in authoritative medical literature; and b. [governmental] regulations, reports, publications and evaluations...." The administrator, thus, must determine whether a particular treatment is experimental by evaluating the authoritative medical literature, and by considering the other portions of the State Plan, not quoted above, dealing with clinical trials, FDA approval, a provider's institutional review board, and research protocols. If the Commission does not wish the administrator to be so limited, then the State Plan's language must be modified.
In addition, we are somewhat concerned with the rationale utilized by the Commission in making its determination concerning the nature of the subject treatment. Despite the lack of definitive medical studies, the Commission found that because *514 the procedure was prescribed only by doctors practicing alternative medicine and was not deemed safe by traditional doctors, "it follows that the procedure needs further evaluation before it would be accepted as appropriate treatment."
Thus, the Commission determined that traditional gastroenterologists constituted the "appropriate specialty of the United States medical profession" and accepted Dr. Schwartz's conclusion that the treatment was unsafe because it had no benefits, and, therefore, its risks outweighed any potential benefit. According to Dr. Schwartz the treatment was "at best experimental," and at worst "quackery."
Once an entire treatment is labeled "experimental," it is excluded from coverage regardless of whether or not the treatment was promising or based on sound medical, biological or scientific practices. If excluded as experimental, there is no coverage.
New alternative medical treatments should not be excluded from coverage without careful consideration. "Insurer inclusion of alternative and complementary therapies is likely to expand as therapies gain acceptance and credibility, and gain support by data showing that such treatment can contribute to health so as to minimize insurers' overall costs." See, Michael H. Cohen, Holistic Health Care: Including Alternative and Complementary Medicine in Insurance and Regulatory Schemes, 28 Ariz.L.Rev. 83, 156 (1996). Currently, as Dr. Schwartz recognized, there are many medical schools in the United States that are teaching alternative approaches to some traditional practices. As more and more doctors become familiar with alternative practices, we can anticipate the availability and increasing utilization of unstudied alternative treatments. Kathleen M. Boozang, Western Medicine Opens the Door to Alternative Medicine, 24 Am.J.L. & Med. 185, 186-187 (1998). To some degree, the Commission's approach relating to colonic hydrotherapy could be applied to any future alternative treatment that is not generally recognized or prescribed by traditional doctors. We urge the Commission not to do so routinely. Let us try and explain our concerns.
In essence, the Commission has stated that because few to no traditional doctors prescribe this treatment, then the alternative practices must be experimental or investigational. And, therefore, under this rationale, the converse is true, that a treatment will become non-experimental only when traditional doctors begin prescribing or become supportive of the treatment. "Organized medicine, since its inception, has fought to maintain a firm grip on the philosophy of health care generally, as well as on the specific treatments patients should have available to them." Id. at 186.
When other alternative medicine treatments are presented for reimbursement, we hope that the Commission will determine with an open mind which "appropriate specialty" should be searched for "prevailing opinion." Assuming there are no ongoing or planned trials or tests, and no definitive scientific reports or studies regarding the new treatment, the Commission should carefully consider whether the "appropriate specialty" should be alternative licensed medical practitioners of the proposed treatment rather than whatever traditional medical specialty may be related to the treatment.
If a licensed alternative medical provider indicates that the treatment is based on sound medical, biological or scientific principles; widely prescribed and recognized by other alternative medical providers; and considered efficacious and safe, the Commission should not reject the treatment solely because traditional doctors do not yet utilize the treatment or are completely unfamiliar with the practice. Ibid. In that instance, the new treatment should be carefully evaluated under the other provisions of the plan, and not automatically excluded solely because no traditional physician is as yet prescribing the treatment.
*515 With those words of caution, we recognize that in this case, the record fully supports the Commission's approach to the specific treatment involved. Only colonic hydrotherapy was found to be experimental and excluded from coverage. There was sufficient evidence for the Commission to conclude that this particular treatment was potentially unsafe and inefficacious for the purposes prescribed, and it was not error to consider the gastroenterologist as the "appropriate specialty" to determine whether this particular treatment requires further evaluation. Therefore, in this instance, the Commission properly denied reimbursement to Murray, and based on the review standard we must apply, we have no choice but to affirm.
Affirmed.