**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0048-19T4

IN THE MATTER OF
ISAIAH MATEO, POLICE
OFFICER (S9999U),
HOBOKEN.

_____

Argued November 16, 2020 – Decided December 18, 2020

Before Judges Gooden Brown and DeAlmeida.

On appeal from the New Jersey Civil Service Commission, Docket No. 2019-2566.

Catherine M. Elston argued the cause for appellant (C. Elston & Associates, LLC, attorneys; Catherine M. Elston, of counsel and on the briefs).

Alyssa L. Bongiovanni, Assistant Corporation Counsel, argued the cause for respondent City of Hoboken (Hoboken City Law Department, attorneys; Alyssa L. Bongiovanni, of counsel and on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent Civil Service Commission (Jonathan S. Sussman, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Isaiah Mateo appeals from the August 5, 2019 final agency decision of the Civil Service Commission (Commission) upholding a determination to remove his name from the civil service eligibility list for police officers based on its conclusion that he made false statements on his application to the City of Hoboken Police Department. We affirm.

Mateo achieved a passing score in the 2016 open competitive examination for the title of police officer and was ranked on the subsequent list of eligible candidates. As a result, in September 2017, Mateo, then twenty-one-years-old, submitted an application for a police officer position with the Hoboken Police Department which consisted of a thirty-seven-page personal history questionnaire. The questionnaire cautioned that "any deliberate omission or falsification of information can result in . . . disqualification from consideration for employment" and included Mateo's certification "that each and every answer [was] full, true and correct in every respect."

Following receipt of the questionnaire, Sergeant Charles Kucz of the Hoboken Police Department Applicant Investigation Unit submitted a memorandum to Lieutenant Scott Hochstadter dated November 16, 2018, detailing the results of the investigation into Mateo's questionnaire. The memorandum noted the following omissions in the questionnaire:

A check of the [New Jersey (NJ)] Automated Traffic System (ATS) pertaining to [Mateo] was completed yielding a summons received on [December 18, 2015,] in Ridgefield Park, NJ for an equipment violation "Safety Glass Requirement[.]" This was not disclosed on the applicant['s] Personal History Questionnaire. An updated ATS check was conducted on [November 14, 2018,] which revealed two summonses issued on [August 31, 2018] in Hoboken, NJ for "Improper Use of a Cellular Phone" and "Failure to Wear Seatbelt[.]" Both summonses have since been disposed of.

. . . .

A check of the Hoboken Police Department Records Bureau as well as the former IMPACT database revealed [Mateo] was arrested by the undersigned on [September 10, 2010,] for Possession of CDS Marijuana [fifty] grams or less (Juvenile Delinquency) as a [fourteen-year-old]. The applicant disclosed this police interaction in his response to question [seventy-eight] on the Personal History Questionnaire indicating "no charge" in the "violation charged" space provided.

. . . .

On [November 14, 2017], a disciplinary records request was sent to Drew University. On [December 4, 2017], a response was received from Lynn Vogel who [was] identified as an Administrative Assistant for Drew Universit[y's] Campus Life and Student Affairs Office. The response indicated that [Mateo was] in good academic standing, however, [he] had been found responsible for several student conduct violations from August of 2014[,] through November 30, 2017[,] including the following:

3

10/02/2015- Violation of Campus Housing regulations (prohibited appliance)
11/24/2015- Underage Alcohol; Violation of Campus Housing Regulations
02/07/2016- Alcohol General; Guest Policy
03/10/2016- Damage/Vandalism (Door Lock)
05/12/2016- Improper Check Out
09/04/2016- Alcohol General; Underage Alcohol
09/14/2016- Alcohol General; Violation of Public Law (Public Urination)

The above listed student conduct violations, per the response from Drew University, were sanctioned by progressive discipline which included fines, community service, parental notification and disciplinary probation. It should be noted that the applicant did not disclose these student conduct violations on his Personal History Questionnaire; specifically[,] question [thirty-two] which asks: List any problems with school and/or college (absenteeism, tardiness, poor grades, other discipline problems).

Subsequently, the Commission sent Mateo a Certification Disposition Notice dated February 21, 2019, informing him that "[his] name [had] been removed from [the eligibility] list because documentation indicate[d he] falsified [his] application for th[e] position." (changed from all capitals). The notice specified that an appeal could be filed by "writing to the . . . Commission" within "[twenty] days from the date of th[e] notice" indicating "why th[e] action

4

[was] not warranted." Mateo retained counsel, who requested in letters to the Commission dated March 11 and 13, 2019, "all documentation relied upon by Hoboken" in removing Mateo's name from the eligibility list. Mateo's counsel also requested twenty days from receipt of the documents to file an appeal.

The Commission responded in a letter dated April 16, 2019, providing Mateo's counsel with Kucz' November 16, 2018 memorandum to Hochstadter; Kucz' November 14, 2017 records request to Drew University and the University's response; pages thirteen and fourteen of Mateo's questionnaire; a NJ ATS print out of the 2015 equipment violation summons; and the arrest report detailing Mateo's 2010 juvenile arrest for possession of under fifty grams of marijuana. The Commission's April 16, 2019 letter explained that the documentation provided indicated, "among other things," that Mateo "failed to disclose multiple motor vehicle summonses including improper use of a cellular phone and failure to wear a seatbelt."

In the letter, the Commission concluded that "[g]iven that [p]olice [o]fficers hold highly visible and sensitive positions within the community," and "certain motor vehicle infractions reflect a disregard for the law and are incompatible with the duties of a law enforcement officer[,]" there was "no basis to restore [Mateo's] name to the . . . eligible list" because "the record

5

demonstrate[d] that . . . Mateo failed to disclose material information on his employment application." Thus, the letter noted that the Commission "consider[ed] the matter closed."

Thereafter, Mateo's counsel requested that the matter be reopened and requested an extension to file an appeal. Counsel also notified the Commission that she had not received "relevant pages" of the questionnaire "referenced in the documentation as a basis for removal." In a letter dated June 6, 2019, the Commission granted Mateo's extension request and directed the City of Hoboken to provide Mateo by June 26, 2019, copies of all materials sent to the Commission to support the removal. The letter also provided deadlines for the submission of responses by both parties and stated that absent a request for "additional time[,]" the record would be closed on July 16, 2019, after which the Commission would "review the matter on the existing record." The City of Hoboken supplied the requested documents on June 11, 2019, and Mateo filed a formal appeal accompanied by supporting certifications and reference letters on June 25, 2019.

In his supporting certification, Mateo addressed his juvenile arrest, motor vehicle violations, and college disciplinary infractions. Regarding the juvenile arrest, Mateo asserted that although he "list[ed] th[e] incident on [his]

6

application[,]" he "wrote N/A on the 'charge' lines" because he did not recall any "formal 'charge'" or "going to court for the incident." Instead, he "recall[ed] being brought into police headquarters and released to [his] parents." Moreover, prior to submitting the application, when he called the City "to confirm the information [he] recalled from the juvenile incident[,]" he was told the records "could not [be] locate[d]." Mateo also pointed out that "[w]hile [he] did not recall the specific charge [of] 'possession of marijuana', [he] did state on the application, in response to another question, that [he] smoked marijuana when [he] was [fourteen] years old." Mateo explained that because he "admitted [his] use of marijuana at age [fourteen] in response to one question[, he] had no reason to omit it on another."

Regarding the motor vehicle summonses, Mateo stated the omissions "were not intentional." He explained that he "simply forgot" receiving "[t]he '[s]afety [g]lass' violation" two years prior because "it did not result in points on [his] license." As to the two violations he received in 2018, they "occurred after [his] application was turned in" and he "did not recall the application stating any procedure to update or supplement the information provided once the application was turned in[.]" However, "from [his] conversations with various Hoboken officers regarding the employment process, [he] knew there would be

A-0048-19T4

an opportunity to disclose the tickets if and when [he] was called for the position" and, in fact, "advised" Hochstadter about the tickets during a September 2018 informational meeting with approximately fifteen other candidates during which "the background process [was] explained."

As to omitting his college discipline record, Mateo stated it "was an oversight on [his] part." Mateo explained that over the course of only one week, in the process of gathering a plethora of documents "that needed to be submitted with the application[,]" he had "skipped" the question "pertaining to school discipline" because he "did [not] recall the specific information requested" at the time. "When [he] returned to complete the question[,] . . . for a reason [he did not] recall, [his] focus was on high school discipline," not "college discipline." Mateo stated that from his conversations "about the application process" with various police officers and others over the years, he "was fully aware of the ramifications for putting false information on the application, including being removed for consideration." He reiterated that his omissions "were not intentional." Further, "all the information" he "omitted was included on documentation that [he] authorized the City to obtain, including [his] college records, [his] driving records, and [his] criminal records."

A-0048-19T4

In his certification, Mateo also detailed his personal background as a college graduate, who received a partial "academic scholarship" and "played college baseball all four years" while "work[ing] throughout college." He listed his employment history as a recreational baseball and softball umpire, a basketball camp teacher, a driver for Hoboken Medical Transportation where he "transport[ed] senior citizens[,]" and "a busboy for a busy restaurant." He also highlighted his volunteer service with "various youth sports camps[,]" and the "Hoboken Fire Department['s] charity events" to showcase his "love" for "the City, and [his] love [of] helping people." Additionally, Mateo's reference letters included character references from a Hoboken Fire Department Captain, a Hoboken Fire Department Battalion Chief, a Secaucus police officer, and an Executive Director of the Hoboken Housing Authority where Mateo resided with his family for many years.

In a comprehensive final decision issued on August 5, 2019, the Commission "denied" Mateo's appeal. In the decision, the Commission thoroughly reviewed Mateo's background, his explanations in mitigation of his omissions, and his arguments objecting to the removal of his name from the eligibility list. Relying on N.J.A.C. 4A:4-4.7(a)(1), N.J.A.C. 4A:4-6.1(a)(6), and N.J.A.C. 4A:4-6.1(a)(9), the Commission determined Mateo failed to meet

"his burden of proof" as required under N.J.A.C. 4A:4-6.3(b) and N.J.A.C. 4A:4-4.7(d), and the City of Hoboken showed "sufficient cause for removing his name from the Police Officer (S9999U), Hoboken eligible list." Specifically, the Commission explained that the City of Hoboken "had a valid reason for removing [Mateo's] name from the list" because "the record indicates that [Mateo] has a continuous history of negative interactions with authority, particularly from October 2015 through August 2018."

The Commission "noted that while many of these negative interactions were with his college, some of these incidents involved illegal activity such as underage drinking and public urination." The Commission acknowledged Mateo's concession that the omission of "the 2015 . . . motor vehicle violation and all of the college conduct charges" were "not intentional" but were "unintentional oversight[s]." However, according to the Commission, "even if there was no intent to deceive, . . . [Mateo's] failure to disclose his complete driving history and college conduct violations was material" to the position sought. "At minimum, the [City of Hoboken] needed this information to have a complete understanding of his background in order to properly evaluate his candidacy."

In rejecting Mateo's explanations for his omissions, the Commission stated, "candidates are responsible for the accuracy of their applications."

> Further, signing a release that authorized the appointing authority to conduct a background investigation which revealed incidents that [Mateo] did not disclose did not relieve him of his obligation to submit a complete and accurate background. In reference to his claim that he did not falsify his application because there were no specific instructions about updating an already completed application, since [Mateo] knew the appointing authority asked about past incidents, common sense dictates that [Mateo] should have known to immediately contact the appointing authority to explain incidents which took place after he submitted his application and waiting for the background investigation to advise of the infractions was insufficient. Regardless, the Commission has the authority to consider these post-application violations, and, . . . has found them to be part of a continuing pattern of problematic conduct by [Mateo].

In evaluating Mateo's "continuing pattern of problematic conduct" in relation to his character and judgment for the position, the Commission determined Mateo "currently lacks the judgment and background to be a [p]olice [o]fficer."

> In this regard, it is recognized that a municipal [p]olice [o]fficer is a law enforcement employee who must enforce and promote adherence . . . to the law. Municipal [p]olice [o]fficers hold highly visible and sensitive positions within the community and . . . the standard for an applicant includes good character and an image of the utmost confidence and trust. It must be

recognized that a municipal [p]olice [o]ffice[r] is a special kind of employee. His primary duty is to enforce and uphold the law. He carries a service revolver on his person and is constantly called upon to exercise tact, restraint[,] and good judgment in his relationship with the public. He represents law and order to the citizenry and must present an image of personal integrity and dependability in order to have the respect of the public. See Moorestown v. Armstrong, 89 N.J. Super. 560, 566 (App. Div. 1965) . . . . See also In re Phillips, 117 N.J. 567 (1990). Moreover, as these incidents, except for the juvenile offense, took place either shortly before the August 31, 2016 closing date or after the closing date, there has been insufficient time for [Mateo] to demonstrate rehabilitation.

This appeal followed.

On appeal, Mateo raises the following points for our consideration:[1]

I. AS A MATTER OF LAW, THE . . . COMMISSION'S FINDING THAT [MATEO] "FALSIFIED" HIS APPLICATION IS ARBITRARY, CAPRICIOUS, AND UNREASONABLE.

II. THE . . . COMMISSION'S ALTERATION AND BROADENING OF THE BASES FOR [MATEO'S] REMOVAL, SET FORTH FOR THE FIRST TIME IN ITS FINAL ADMINISTRATIVE DECISION AND AFTER [MATEO] FILED HIS APPEAL DOCUMENTS, IS A VIOLATION OF FUNDAMENTAL FAIRNESS AND THE SQUARE CORNER[S] DOCTRINE.

---

[1] We have eliminated the point heading describing the standard of review and renumbered the remaining points accordingly.

III. AS A MATTER OF LAW, THE REMOVAL OF [MATEO] FROM THE HIRING LIST BASED ON HIS DRIVING RECORD, JUVENILE ARREST, OR COLLEGE DISCIPLINE IS ARBITRARY, CAPRICIOUS AND UNREASONABLE.

IV. RESPONDENT'S ACCUSATION OF "FALSIFICATION," WITHOUT THE ABILITY TO CONFRONT HIS ACCUSER AND HAVE A HEARING BEFORE A NEUTRAL HEARING OFFICER, DEPRIVES [MATEO] OF HIS CONSTITUTIONALLY PROTECTED LIBERTY INTEREST.

Our role in reviewing the decision of an administrative agency is, of course, limited. In re Carter, 191 N.J. 474, 482 (2007). We attach "a strong presumption of reasonableness . . . to the actions of the administrative agencies[,]" In re Carroll, 339 N.J. Super. 429, 437 (App. Div. 2001) (internal quotation marks and citations omitted), and "give great deference to an agency's interpretation of statutes within its scope of authority and its adoption of rules implementing the laws for which it is responsible," Hargrove v. Sleepy's, LLC, 220 N.J. 289, 302 (2015) (internal quotation marks and citations omitted). "However, we are not bound by the agency's interpretation of a statute or resolution of a question of law." Carroll, 339 N.J. Super. at 437 (citing In re Taylor, 158 N.J. 644, 656 (1999)).

Nonetheless, we will not upset the determination of an administrative agency absent a showing it was arbitrary, capricious, or unreasonable. In re Stallworth, 208 N.J. 182, 194 (2011).

> Under the arbitrary and capricious standard, the scope of judicial review is restricted to four inquiries:
>
> > (1) whether the agency's decision offends the State or Federal Constitution; (2) whether the agency's action violates express or implied legislative policies; (3) whether the record contains substantial evidence to support the findings on which the agency based its action; and (4) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Karins v. Atl. City, 152 N.J. 532, 540 (1998) (quoting George Harms Constr. Co. v. New Jersey Tpk. Auth., 137 N.J. 8, 27 (1994)).]

We will also yield to an agency's expertise even where the evidence supports more than one conclusion. "Where there is substantial evidence in the record to support more than one . . . conclusion, 'it is the agency's choice which governs.'" Murray v. State Health Benefits Comm'n, 337 N.J. Super. 435, 442 (App. Div. 2001) (quoting In re Vineland Chem. Co., 243 N.J. Super. 285, 307 (App Div. 1990)). "In such a situation, we cannot substitute our judgment for

14

that of the agency, even if we would have decided the case differently . . . ." Id. at 443.

Applying those standards here, we find no basis to reverse the Commission's decision. Pursuant to its regulations, the Commission is authorized to remove an individual from an eligible list based on his or her background and its adverse relationship to the nature of the position sought. N.J.A.C. 4A:4-4.7(a)(1), in conjunction with N.J.A.C. 4A:4-6.1, allows the removal of "[t]he name of an eligible" from an employment list when the applicant "[h]as made a false statement of any material fact or attempted any deception or fraud in any part of the selection or appointment process[,]" N.J.A.C. 4A:4-6.1(a)(6), or for "[o]ther sufficient reasons." N.J.A.C. 4A:4-6.1(a)(9). Under N.J.A.C. 4A:4-4.7(d), "[a]n eligible may appeal his or her removal from an eligible list" but, pursuant to N.J.A.C. 4A:4-6.3(b), "shall have the burden of proof."

The Commission's interpretation of N.J.A.C. 4A:4-6.1(a)(6) shows that falsification does not require proof of intent to deceive or conceal as Mateo contends. In the regulation, by use of the disjunctive "or" after "a false statement of any material fact[,]" it is clear that there are two exclusive grounds upon which a person can be removed from the eligibility list – when the applicant

15

"[h]as made a false statement of any material fact" or for "attempted . . . deception or fraud . . . ." N.J.A.C. 4A:4-6.1(a)(6). See Gallenthin Realty Dev., Inc. v. Borough of Paulsboro, 191 N.J. 344, 368 (2007) (recognizing that "or" is read typically as a disjunctive and only in the conjunctive to reasonably effectuate legislative intent) (citation omitted); see also Headen v. Jersey City Bd. of Educ., 212 N.J. 437, 451 (2012) (applying the same rules of construction for statutory interpretation to interpretation of regulations) (citation omitted).

Here, the record amply supports the decision reached by the City of Hoboken, which was upheld by the Commission, that Mateo made false statements on his application by omitting information material to the position of a police officer. We agree with the Commission that "[t]he primary inquiry in such a case is whether the candidate withheld information that was material to the position sought, not whether there was any intent to deceive on the part of the applicant." The Commission considered but ultimately rejected Mateo's explanations to mitigate the omission of his negative encounters with authority and concluded that not enough time had passed to show that he had been rehabilitated. Given the nature of the position sought, the resulting removal of his name from the eligible list was justified.

A-0048-19T4

We also reject Mateo's claim that the Commission's April 16, 2019 letter closing the matter, and its August 5, 2019 final decision denying the appeal constituted a "broadening of the bases of removal" that "violates the equitable 'square corners doctrine.'" "In numerous circumstances, the courts have said that the government must 'turn square corners' in its dealings with others, and 'comport itself with compunction and integrity.'" Sellers v. Bd. of Trs. of the Police & Firemen's Ret. Sys., 399 N.J. Super. 51, 59 (App. Div. 2008) (quoting F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 426-27 (1985)). That doctrine has no application here. Mateo received written notice of the proposed removal and, with the assistance of counsel, was afforded a full opportunity to contest the action. In his administrative appeal, he addressed and explicitly responded to all the bases cited for his removal, which arguments were considered by the Commission in its final decision.

Likewise, we reject Mateo's contention that the removal of his name from the eligibility list based on false statements on his application implicates constitutional due process claims. The law is well settled that "[n]o right accrues to a candidate whose name is placed on an eligible list." In re Foglio, 207 N.J. 38, 44 (2011) (quoting In re Crowley, 193 N.J. Super. 197, 210 (App. Div. 1984)). "The only benefit inuring to such a person is that so long as that list

remains in force, no appointment can be made except from that list[,]" ibid., and "'the best that can be said' of a candidate on an eligible list is that he has 'a right to be considered for appointment.'" Id. at 44-45 (quoting Nunan v. N.J. Dep't of Pers., 244 N.J. Super. 494, 497 (App. Div.1990)).

We agree with the Commission that Mateo failed to carry his burden to establish that the removal of his name from the eligibility list was unwarranted. Because Mateo did not dispute the material facts, only the Commission's evaluation of the weight accorded the undisputed facts, we find no error in the Commission's decision to hear the matter on the written record. See N.J.A.C. 4A:2-1.1(d) ("Except where a hearing is required by law [or these rules], or where the Civil Service Commission finds that a material and controlling dispute of fact exists that can only be resolved by a hearing, an appeal will be reviewed on a written record."); In re Wiggins, 242 N.J. Super. 342, 345 (App. Div. 1990) ("The determination whether such a situation exists [to warrant a hearing] is one committed to the discretion of the [Commission], and its decision will be affirmed unless it goes beyond the range of sound judgment."). Moreover, Mateo never requested an evidentiary hearing.

In sum, Mateo has failed to show that the Commission's decision is not supported by sufficient credible evidence in the record, R. 2:11-3(e)(1)(D), or is

18

otherwise arbitrary, capricious, or unreasonable. To the extent any argument raised by Mateo has not been explicitly addressed in this opinion, it is because the argument lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION