NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1664-20

MATHEW T. SULLIVAN,

      Appellant,

v.

BOARD OF REVIEW,
DEPARTMENT OF LABOR,
and TURTLE AND THE
WOLF, LLC,

      Respondents.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| **March 7, 2022** |
| **APPELLATE DIVISION** |

Submitted February 2, 2022 – Decided March 7, 2022

Before Judges Whipple, Geiger, and Susswein.

On appeal from the Board of Review, Department of
Labor, Docket No. 219767.

Mathew T. Sullivan, appellant pro se.

Andrew J. Bruck, Acting Attorney General, attorney
for respondent Board of Review (Jane C. Schuster,
Assistant Attorney General, of counsel; Roger
Castillo, Deputy Attorney General, on the brief).

The opinion of the court was delivered by

WHIPPLE, J.A.D.

Petitioner Mathew T. Sullivan appeals from a February 9, 2021 decision by the Board of Review, Department of Labor and Workforce Development (Board). Because petitioner was not qualified to receive the New Jersey unemployment benefits he received during the COVID-19 pandemic through the Coronavirus Aid, Relief, and Economic Security (CARES) Act, 15 U.S.C. §§ 9001 to 9141,[1] he must refund $5,584, and we affirm.

Petitioner worked as a chef for Turtle and the Wolf, LLC, a restaurant in Montclair, from September 2016 to October 20, 2019. He voluntarily left the job because he wanted additional compensation from his employer and had moved from Bloomfield to Clinton, which involved a longer commute.

On April 26, 2020, during the COVID-19 pandemic, petitioner filed a claim for unemployment benefits, establishing a weekly benefit rate of $698. He received $5,584 in benefits for eight weeks, from May 2, 2020, through June 20, 2020. On June 19, 2020, petitioner started work for a new employer and did not file for benefits past the week ending on June 20, 2020.

---

[1] Signed into law on March 27, 2020, the CARES Act, 15 U.S.C. §§ 9001 to 9141, "create[d] a new temporary federal program called Pandemic Unemployment Assistance (PUA) that in general provides up to [thirty-nine] weeks of unemployment benefits, and provides funding to states for the administration of the program." U.S. DEP'T OF LABOR, UNEMPLOYMENT INSURANCE PROGRAM LETTER No. 16-20 at 1 (2020), https://wdr.doleta.gov/directives/attach/UIPL/UIPL_16-20.pdf.

 A-1664-20

By letter dated July 15, 2020, the Division of Unemployment and Temporary Disability Insurance (Division), Department of Labor and Workforce Development, notified petitioner:

> You are disqualified for benefits from [October 20, 2019] and will continue to be disqualified until you have worked eight or more weeks in employment and have earned at least ten times your weekly benefit rate.
>
> You left work voluntarily on [October 20, 2019].
>
> Your last day of work was [October 20, 2019]. You resigned because you were seeking a better job with benefits. You are not unemployed due to one of the qualifying reasons identified under the CARES Act. You are therefore ineligible for Pandemic Unemployment Assistance (PUA) benefits.
>
> Therefore, your reason for leaving does not constitute good cause attributable to the work. You are disqualified for benefits.

On the same date, the Division sent petitioner a Request for Refund imposing a liability to refund $5,584. He appealed both and the Appeal Tribunal held a telephonic appeal hearing during which petitioner participated pro se. The Appeal Tribunal affirmed the Division's findings of fact and legal determination that petitioner had left work voluntarily and had not evidenced good cause for leaving attributable to the job and was disqualified for unemployment benefits as of October 20, 2019, under unemployment compensation law, N.J.S.A. 43:21-5(a).

A-1664-20

On September 28, 2020, petitioner appealed to the Board. The Board affirmed the Appeal Tribunal's decision on February 9, 2021 by stating:

> The [f]indings of [f]act and [o]pinion as developed by the Appeal Tribunal and the allegations of the appellant have been carefully examined.
>
> Since the appellant was given a full and impartial hearing and a complete opportunity to offer any and all evidence, there is no valid ground for a further hearing.
>
> On the basis of the record below, we agree with the decision reached.

This appeal followed. Petitioner argues that the Division is estopped from seeking a refund because it erroneously paid the amounts and should not benefit from that mistake. We are sympathetic to the hardship many people, including petitioner, endured during the 2020 lockdown as a result of the COVID-19 pandemic. However, we consider it necessary to explain what the CARES Act permitted and what it did not permit within the context of New Jersey's unemployment compensation laws.

New Jersey statute, N.J.S.A. 43:21-5, provides, in pertinent part:

> An individual shall be disqualified for benefits:
>
> > (a) For the week in which the individual has left work voluntarily without good cause attributable to such work, and for each week thereafter until the individual becomes reemployed and works eight weeks in employment, which may include

employment for the federal government, and has earned in employment at least ten times the individual's weekly benefit rate, as determined in each case. . . .

N.J.S.A. 43:21-16(d)(1) provides, in pertinent part:

When it is determined by a representative or representatives designated by the Director of the Division of Unemployment and Temporary Disability Insurance of the Department of Labor and Workforce Development of the State of New Jersey that any person . . . has received any sum as benefits under this chapter . . . while any conditions for the receipt of benefits imposed by this chapter . . . were not fulfilled in his [or her] case, or while he [or she] was disqualified from receiving benefits, or while otherwise not entitled to receive such sum as benefits, such person . . . shall be liable to repay those benefits in full. . . . Such person shall be promptly notified of the determination and the reasons therefor. The determination shall be final unless the person files an appeal of the determination within seven calendar days after the delivery of the determination, or within [ten] calendar days after such notification was mailed to his [or her] last-known address . . . .

[(internal citations omitted).]

The CARES Act expanded eligibility, under the PUA program, for payment of benefits for certain categories of individuals. Thus, when petitioner was determined to be disqualified for state benefits for the relevant time period, the Division had determined whether he was a covered individual under the PUA even if he was not unemployed for an expanded reason through the CARES Act. The Division determined, however, that petitioner left work

5

voluntarily without good cause attributable, which disqualifies him under the PUA.

Under the CARES Act, the Secretary of Labor "shall provide to any covered individual unemployment benefit assistance while such individual is unemployed, partially unemployed, or unable to work for the weeks of such unemployment with respect to which the individual is not entitled to any other unemployment compensation. . . ."  15 U.S.C. § 9021(b).

A "covered individual" is an individual who:

> (i) is not eligible for regular compensation or extended benefits under State or Federal law or pandemic emergency unemployment compensation under section 9025 . . . including an individual who has exhausted all rights to regular unemployment or extended benefits under State or Federal law or pandemic emergency unemployment compensation under section 9025 . . . ;
>
> (ii) provides self-certification that the individual—
>
>> (I) is otherwise able to work and available for work within the meaning of applicable State law, except the individual is unemployed, partially unemployed, or unable or unavailable to work because—
>>
>>> (aa) the individual has been diagnosed with COVID-19 or is experiencing symptoms of COVID-19 and seeking a medical diagnosis;

6

(bb) a member of the individual's household has been diagnosed with COVID-19;

(cc) the individual is providing care for a family member or a member of the individual's household who has been diagnosed with COVID-19;

(dd) a child or other person in the household for which the individual has primary caregiving responsibility is unable to attend school or another facility that is closed as a direct result of the COVID-19 public health emergency and such school or facility care is required for the individual to work;

(ee) the individual is unable to reach the place of employment because of a quarantine imposed as a direct result of the COVID-19 public health emergency;

(ff) the individual is unable to reach the place of employment because the individual has been advised by a health care provider to self-quarantine due to concerns related to COVID-19;

(gg) the individual was scheduled to commence employment and does not have a job or is unable to reach the job as a direct result of the COVID-19 public health emergency;

(hh) the individual has become the breadwinner or major support for a household because the head of the household has died as a direct result of COVID-19;

7

(ii) the individual has to quit his or her job as a direct result of COVID-19;

(jj) the individual's place of employment is closed as a direct result of the COVID-19 public health emergency; or

(kk) the individual meets any additional criteria established by the Secretary for unemployment assistance under this section; or

(II) is self-employed, is seeking part-time employment, does not have sufficient work history, or otherwise would not qualify for regular unemployment or extended benefits under State or Federal law or pandemic emergency unemployment compensation under section 9025 . . . and meets the requirements of subclause (I); and

(iii) provides documentation to substantiate employment or self-employment or the planned commencement of employment or self-employment not later than [twenty-one] days after the later of the date on which the individual submits an application for pandemic unemployment assistance under this section or the date on which an individual is directed by the State Agency to submit such documentation in accordance with [20 C.F.R. 625.6(e)], or any successor thereto, except that such deadline may be extended if the individual has shown good cause under applicable State law for failing to submit such documentation. . . .

[15 U.S.C. § 9021(a)(3)(A).]

A "covered individual" does not include:

(i) an individual who has the ability to telework with pay; or

(ii) an individual who is receiving paid sick leave or other paid leave benefits, regardless of whether the individual meets a qualification described in items (aa) through (kk) of subparagraph (A)(i)(I).

[15 U.S.C. § 9021(a)(3)(B).]

Under 42 U.S.C. § 502, states must ensure that federal funds are used for the "proper and efficient administration" of unemployment compensation laws.

Because petitioner did not fall into any of these delineated CARES Act categories or qualify for the PUA program otherwise, the Division, acting for the State, determined he was required to refund the payments he received. Petitioner does not argue that he falls into one of these categories; he does not assert erroneous findings of fact as to his circumstances nor for an expansive interpretation of one of these categories to include his circumstances. Rather, petitioner argues that because the Division awarded the funds at one point, it should be estopped from seeking the refund. His argument fails because the Division must seek repayment for improperly awarded benefits, and we discern no error in the Division seeking such repayment, nor in the subsequent decisions from the Appeal Tribunal and Board, because of petitioner's ineligibility for such benefits.

"N.J.S.A. 43:21-16(d) requires the full repayment of unemployment benefits received by an individual who, for any reason, regardless of good faith, was not actually entitled to those benefits." Bannan v. Bd. of Rev., 299 N.J. Super. 671, 674 (1997). "The Division shall issue a demand for refund of unemployment benefits in each case when a determination of overpayment is made. Except in the case of fraud, an individual shall be notified of the demand for refund within four years after benefits were received. . . ." N.J.A.C. 12:17-14.1.

Our scope of review is narrow. As a general matter, we will disturb an agency's adjudicatory decision only upon a finding that the decision is "arbitrary, capricious or unreasonable," or is unsupported "by substantial credible evidence in the record as a whole." Henry v. Rahway State Prison, 81 N.J. 571, 579–80 (1980) (citing Campbell v. Dep't of Civ. Serv., 39 N.J. 556, 562 (1963)). In determining whether agency action is arbitrary, capricious, or unreasonable, a reviewing court must examine:

> (1) [W]hether the agency's action violates express or implied legislative policies, that is, did the agency follow the law;
>
> (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and
>
> (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a

10

conclusion that could not reasonably have been made on a showing of the relevant factors.

[In re Carter, 191 N.J. 474, 482-83 (2007) (quoting Mazza v. Bd. of Trs., 143 N.J. 22, 25 (1995)).]

Furthermore, we defer to an agency's expertise. See Murray v. State Health Benefits Comm'n, 337 N.J. Super. 435, 442 (App. Div. 2001) ("[W]here there is substantial evidence in the record to support more than one regulatory conclusion, it is the agency's choice which governs.") (internal quotation marks omitted) (quoting In re Vineland Chem. Co., 243 N.J. Super. 285, 307 (App. Div. 1990)). Our review is not, however, "perfunctory," nor is "our function . . . to merely rubberstamp an agency's decision." Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 191 (App. Div. 2010). Rather, we are constrained "to engage in a careful and principled consideration of the agency record and findings." Ibid. (internal quotation marks omitted) (quoting Williams v. Dep't of Corr., 330 N.J. Super. 197, 204 (App. Div. 2000)).

Based on our review of the record, the Division's determination, and the subsequent decisions on appeal, were not "arbitrary, capricious or unreasonable" and were amply supported "by substantial credible evidence in the record as a whole." Henry, 81 N.J. at 579–80. The record is undisputed that petitioner voluntarily left his job at Turtle and the Wolf for personal reasons, and he was not unemployed for reasons related to the COVID-19

pandemic as set forth in the CARES Act nor unemployed otherwise under the PUA.

Petitioner focuses his argument on how the Division should be estopped from seeking the return of the benefits that the Division erroneously paid him because he "clearly relied [on the benefits to his] detriment and spent the money." We disagree and affirm because, for the reasons set forth above which petitioner did not specifically appeal or argue against, petitioner was not entitled to these benefits and the Division did not arbitrarily seek repayment, so petitioner has not suffered a manifest injustice in being required to refund the improper benefits.

The doctrine of equitable estoppel "is designed to prevent a party's disavowal of previous conduct if such repudiation would not be responsive to the demands of justice and good conscience." Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 189 (2013) (quoting Heuer v. Heuer, 152 N.J. 226, 237 (1998)). To establish equitable estoppel, the party seeking to invoke the doctrine must prove that an opposing party "engaged in conduct, either intentionally or under circumstances that induced reliance, and that [the moving party] acted or changed . . . position to [his or her] detriment." Knorr v. Smeal, 178 N.J. 169, 178 (2003). "Although the doctrine of equitable estoppel is rarely invoked against a governmental entity . . . [courts have] long

12

held that the prevention of manifest injustice provides an exception to the general rule."  Aqua Beach Condo. Ass'n v. Dep't of Cmty. Affairs, Bureau of Homeowners Prot., New Home Warranty Program, 186 N.J. 5, 20 (2006) (quoting Casamasino v. City of Jersey City, 158 N.J. 333, 354 (1999)).  But, "even-handed application of fairly adopted and clear regulations debunks any claim of 'manifest injustice.'"  Ibid.

Petitioner did not demonstrate a "manifest injustice" that would justify invoking equitable estoppel against the State.  Although the Division erroneously granted petitioner benefits, the State, through the Division and appeals process, even-handedly and reasonably applied federal and State laws and regulations to seek a refund of those benefits.  See Aqua Beach Condo. Ass'n, 186 N.J. at 20.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13