**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0195-23

HAKIM NELSON,

     Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____

Submitted December 12, 2024 – Decided December 20, 2024

Before Judges Natali and Walcott-Henderson

On appeal from the New Jersey Department of Corrections.

Hakim Nelson, appellant pro se.

Matthew J. Platkin, Attorney General, attorney for respondent (Janet Greenberg Cohen, Assistant Attorney General, of counsel; Joseph D. Sams, Deputy Attorney General, on the brief).

PER CURIAM

Appellant Hakim Nelson, presently incarcerated at Northern State Prison, appeals from a final agency decision of the New Jersey Department of Corrections (Department or NJDOC), which found Nelson committed prohibited act *.005, threatening another with bodily harm or with an offense against his or her person or property, in violation of N.J.A.C. l0A:4-4.l(a)(2)(ii).  We affirm.

On August 21, 2023, while working in a housing unit at East Jersey State Prison, Officer R. Johnson[1] observed violations of the rules and regulations concerning the upkeep and storage of inmates' personal property.  Officer Johnson accordingly called for an inmate count and reminded the inmates of the applicable rules requiring personal property to be neat and orderly for the safety and security of the unit.  According to Officer Johnson's report in the administrative record, Nelson came toward her and yelled, "move, move get out of my way," and "[y]ou woke me up with this bullshit[.]  Get out of my face," and "get out of my face before I do Officer Mecca a favor and beat your ass."

As a result of these statements, Nelson was charged with committing prohibited act *.005.  After Nelson was served with the charges and the Department conducted an internal investigation, prison officials referred the

---

[1]  Neither Officer Johnson's, nor Disciplinary Hearing Officer (DHO) Russell's first names appear in the record.

2

matter to DHO Russell. The Department also obtained a mental health evaluation to assess, among other issues, Nelson's mental state at the time of the August 21, 2023, incident, her competency to participate in the disciplinary proceedings, and the effect any imposed penalty would have on her mental health. Nelson denied the charges, and at her request, was provided with the assistance of a counsel substitute at the three-day disciplinary hearing.

Nelson submitted a written statement detailing her version of the incident where she admitted to using abusive language but denied threatening Officer Johnson. Rather, she contended the two merely argued after Officer Johnson attempted to "joke" with her, when she was "not in the mood." Nelson's counsel substitute also submitted a written statement requesting leniency and asking for the charge to be modified to use of abusive language.

Further, Nelson sought to confront Officer Johnson and was permitted by DHO Russell to submit six written questions. Nelson also contended a video of the incident, which did not include audio, supported her written statement and showed Officer Johnson, rather than exhibiting signs she was threatened, instead showed the two calmly conversing. In further support, she maintained Officer Johnson did not immediately report the incident. Two other NJDOC officers also submitted statements.

A-0195-23

After considering the aforementioned evidence, DHO Russell concluded Nelson committed prohibited act *.005. In finding Nelson committed the infraction, DHO Russell clearly found neither the video, nor Nelson's statements, discredited the Department's competing proofs. DHO Russell imposed the following sanctions: forty-five days in the Restorative Housing Unit, loss of forty-five days of commutation time, and loss of thirty days of recreational privileges.

Nelson filed an administrative appeal in which she contended there was a lack of substantial evidence to support the charge, and DHO Russell's decision was a miscarriage of justice. Nelson also sought a sixty-day suspension of the sanctions. On August 30, 2023, Acting Assistant Superintendent Douglas Stark upheld DHO Russell's findings and upheld the suggested penalties after initially granting Nelson's request for a reduction.

This appeal follows in which Nelson raises two points. First, Nelson argues the Department's finding she committed prohibited act *.005 was not based on substantial evidence in the record. Second, Nelson contends DHO Russell's decision impermissibly shifted the burden of proof to her.

With respect to her first point, Nelson reprises her argument she did not commit prohibited act *.005, and again claims Officer Johnson's actions after

4

their interaction proved she was not threatened by her statements. In support, Nelson notes Officer Johnson followed her to the bathroom to engage her in conversation and completed other tasks, such as transporting other inmates, before reporting the alleged threat. Additionally, Nelson denied making any threats and contends to have done so would have been contrary to her religious principles. Finally, she argues DHO Russell's decision rests solely on a credibility finding based on an assumption that "officers have reasons to tell the truth and no reasons to lie . . . ."

In her second point, Nelson argues the hearing officer impermissibly shifted the burden of proof by requiring her to prove her innocence by discrediting evidence presented by the Department. Nelson also contends DHO Russell's guilty finding was arbitrary, as it assumed officers generally lack a compelling reason to lie or fabricate evidence.

In response, the Department argues Officer Johnson's consistent accounts of the incident in her initial report and in her response to Nelson's confrontation questions coupled with Nelson's admission to using abusive language, constitute the substantial evidence necessary to support a finding of guilt. As to Nelson's second point, the Department contends DHO Russell's decision did not impermissibly shift the burden of proof to Nelson and instead contends the

decision "reflected a determination that: (1) Officer Johnson's account, adjudged by DHO Russell to be credible, constituted 'substantial evidence' in favor of a guilty finding; and (2) the countervailing information or argument Nelson provided at the hearing did not counteract that substantial evidence."

"Our role in reviewing the decision of an administrative agency is limited." Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 190 (App. Div. 2010). "We defer to an agency decision and do not reverse unless it is arbitrary, capricious or unreasonable[,] or not supported by substantial credible evidence in the record." Jenkins v. N.J. Dep't of Corr., 412 N.J. Super. 243, 259 (App. Div. 2010). "'Substantial evidence' means 'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Figueroa, 414 N.J. Super. at 192 (quoting In re Pub. Serv. Elec. & Gas Co., 35 N.J. 358, 376 (1961)).

When reviewing a determination of the NJDOC in a matter involving prisoner discipline, we engage in a "careful and principled consideration of the agency record and findings." Williams v. Dep't of Corr., 330 N.J. Super. 197, 204 (App. Div. 2000) (quoting Mayflower Sec. Co. v. Bureau of Sec. in Div. of Consumer Affairs of Dep't of Law & Pub. Safety, 64 N.J. 85, 93 (1973)). We consider not only whether there is substantial evidence that the inmate committed the prohibited act, but also whether, in making its decision, the

A-0195-23

Department followed regulations adopted to afford inmates' procedural due process. See McDonald v. Pinchak, 139 N.J. 188, 194-96 (1995).

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Jenkins v. Fauver, 108 N.J. 239, 248-49 (1987) (quoting Wolff v. McDonnell, 418 U.S. 539, 556 (1974)). An inmate's more limited procedural rights, initially set forth in Avant v. Clifford, 67 N.J. 496, 525-46 (1975), are codified in a comprehensive set of NJDOC regulations. N.J.A.C. 10A:4-9.1 to 9.28.

Those rights include a right to a fair tribunal, N.J.A.C. 10A:4-9.15, a limited right to call witnesses and present documentary evidence, N.J.A.C. 10A:4-9.13, a limited right to confront and cross-examine adverse witnesses, N.J.A.C. 10A:4-9.14, a right to a written statement of the evidence relied upon and the reasons for the sanctions imposed, N.J.A.C. 10A:4-9.24, and, in certain circumstances, the assistance of counsel substitute, N.J.A.C. 10A:4-9.12. These regulations "strike the proper balance between the security concerns of the prison, the need for swift and fair discipline, and the due-process rights of the inmates." Williams, 330 N.J. Super. at 203 (citing McDonald, 139 N.J. at 202).

A-0195-23

Further, "[w]e recognize that '[p]risons are dangerous places, and the courts must afford appropriate deference and flexibility to administrators trying to manage this volatile environment.'" Blanchard v. N.J. Dep't of Corr., 461 N.J. Super. 231, 238 (App. Div. 2019) (alteration in original) (quoting Russo v. N.J. Dep't of Corr., 324 N.J. Super. 576, 584 (App. Div. 1999)). However, "a disciplinary hearing officer's adjudication that an inmate committed a prohibited act must [still] be based on substantial evidence in the record," Figueroa, 414 N.J. Super. at 191 (citing N.J.A.C. 10A:4-9.15(a)), and not merely be "a subjective hunch, conjecture[,] or surmise of the factfinder." Id. at 191.

Substantial evidence is evidence that "a reasonable mind might accept as adequate to support a conclusion." Blanchard, 461 N.J. Super. at 238 (quoting Figueroa, 414 N.J. Super. at 192). It "has also been defined as 'evidence furnishing a reasonable basis for [an] agency's action.'" Figueroa, 414 N.J. Super. at 192 (quoting McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 562 (2002)). The substantial evidence standard permits an agency to apply its expertise where the evidence supports more than one conclusion. Murray v. State Health Benefits Comm'n, 337 N.J. Super. 435, 442 (App. Div. 2001).

Finally, an inmate charged with committing prohibited act *.005 is guilty if, "on the basis of an objective analysis[,] . . . the remark conveys a basis for

fear." Jacobs v. Stephens, 139 N.J. 212, 222 (1995). In Jacobs, the Court determined that an inmate's statement to a corrections officer "'to get the fuck out of [my] face' during a 'heated' discussion" was sufficient on its own to establish a violation of prohibited act *.005. Id. at 223.

As a threshold matter, we conclude the Department afforded Nelson all due process protections consistent with Avant, including the right to proceed before an impartial tribunal, call witnesses, confront her accuser, and be represented by a counsel substitute. Further, applying the above-stated principles, we are satisfied substantial evidence exists in the record to support the Department's findings.

We initially note that Nelson did not deny making a statement to Officer Johnson, but stated she used only non-threatening "abusive" language. In finding Nelson guilty of the charges, the hearing officer clearly rejected Nelson's version of the events and credited Officer Johnson's report that Nelson threatened her by saying she would do "Officer Mecca a favor and beat [her] ass." This evidence was more than sufficient to sustain a *.005 charge. See Jacobs, 139 N.J. at 219-20 (*.005 charge upheld when inmate yelled profanities at corrections officer, including "fuck you, I ain't giving you shit . . . " "come on, come on[,] I'll fuck you up.").

A-0195-23

In reaching its decision, the hearing officer considered all of the evidence, including Nelson's admission to using abusive language, Officer Johnson's responses to relevant confrontation questions, the parties' written statements, and the video relied upon by Nelson. It is clear, contrary to Nelson's assertion, the hearing officer's findings did not rest on the assumption that "corrections officers have no reason to fabricate allegations against inmates."

For similar reasons we are convinced DHO Russell did not impermissibly shift the burden of proof to Nelson. Rather, DHO Russell's comments in the adjudication report addressed the insufficiencies in Nelson's proofs compared to that of Officer Johnson's, whose statements were detailed and consistent. Again, based on that evidence, DHO Russell clearly credited Officer Johnson's version of the incident over Nelson's and further concluded Nelson's proofs failed to impeach evidence presented by the Department.

To the extent we have not specifically addressed any of Nelson's other contentions, it is because we conclude they lack sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(1)(D) and (E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0195-23